**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
  JANE DOE,

                      Plaintiff,                  Case No:
                                                      21-cv-00610

      -against-

JUAN GONZALES AGENCY CORP., ALLSTATE
FINANCIAL SERVICES, LLC, ALLSTATE              __**COMPLAINT**__
INSURANCE COMPANY, THE ALLSTATE
CORPORATION, ALLSTATE LIFE INSURANCE
COMPANY OF NEW YORK, PAYROLLING         Plaintiff Demands a
PARTNERS, INC.,                              Trial by Jury
and JUAN GONZALES individually,

                      Defendants.
--------------------------------------------------------X

Plaintiff JANE DOE by and through her attorneys DEREK SMITH LAW GROUP, PLLC,

hereby complains of Defendants JUAN GONZALES AGENCY CORP., ALLSTATE

FINANCIAL SERVICES LLC, ALLSTATE INSURANCE COMPANY, THE ALLSTATE

CORPORATION, ALLSTATE LIFE INSURANCE COMPANY OF NEW YORK,

PAYROLLING PARTNERS, INC., JUAN GONZALES individually, and MASSIEL MORA

individually (collectively referred to as "Defendants,") upon information and belief as follows:

## NATURE OF CASE

Plaintiff, JANE DOE is seeking declaratory relief and damages to redress the injuries

Plaintiff has suffered as a result of, *inter alia*, sex/gender discrimination, sexual assault, rape,

kidnapping, false imprisonment, sexual harassment, hostile work environment, retaliation and

wrongful termination by Defendants.

## PRELIMINARY STATEMENT

This case involves Defendants' brutal workplace rape of Plaintiff, multiple instances of

kidnapping/false imprisonment, sexual assault, sexual harassment, retaliation, hostile work environment and unlawful constructive discharge. Defendant JUAN GONZALES, the Plaintiff's former supervisor at an Allstate office in New Rochelle, NY, raped the Plaintiff and created a work atmosphere permeated with inappropriate sexual contact, attempted coercion, harassment and demands for sexual favors. Defendant GONZALES abused his position of authority in the office for his own sexual gratification while repeatedly victimizing the Plaintiff.  The corporate defendants in this action bear liability for the various causes of action articulated herein under numerous legal doctrines including (but not limited to) the single employer doctrine, the joint employer doctrine, *respondeat superior*, and vicarious employer liability.

## JURISDICTION AND VENUE

1. Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII.  The Court also has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

2. Additionally, the Court has supplemental jurisdiction under the State and City laws of New York.

3. On or about December 4, 2019, Plaintiff JANE DOE submitted a Charge of Discrimination to the U.S. Equal Employment Opportunity Commission ("EEOC").   The federal charge numbers assigned for each respective named Defendant entity are: 520-2020-01742; 520-2020-01743; 520-2020-01744; 520-2020-01745; 520-2020-01746.

4. On or about May 14, 2020, Plaintiff JANE DOE received a Right to Sue Letter from the EEOC for federal charge numbers 520-2020-01742, 520-2020-01743; 520-2020-01744; 520-2020-01745.

5. On or about July 1, 2020, Plaintiff JANE DOE received a Right to Sue Letter from the EEOC for federal charge numbers  520-2020-01746 regarding the remaining defendant entity, Defendant

Payrolling Partners, Inc.

6.  The parties hereto entered into successive tolling agreements to toll all applicable statutes of limitations until March 2021.

7.  Plaintiff satisfied all administrative prerequisites and is filing this case within the applicable Statute of Limitations.

8.  Venue is proper in this court, as the events giving rise to this action arose in New Rochelle, Westchester County, New York, within the Southern District of New York.

**<u>PARTIES</u>**

9.  Plaintiff JANE DOE (hereinafter referred to ask "Plaintiff" or "DOE") is seeking damages to redress the injuries Plaintiff has suffered as a result of being discriminated against by her employer, *inter alia*, sex/gender discrimination, sexual assault, rape, kidnapping, false imprisonment, sexual harassment, hostile work environment, retaliation and wrongful termination by Defendants.

10. Plaintiff is an individual woman who is a resident of the State of New Jersey.

11. Defendant JUAN GONZALES AGENCY CORP (hereinafter referred to as "Defendant" or "JGAC") is a service company duly existing as a corporation by the virtue and laws of the State of New York.

12. Defendant ALLSTATE FINANCIAL SERVICES LLC is a foreign business corporation duly existing  by the virtue and laws of the State of Nebraska which does business in New York.

13. Defendant ALLSTATE INSURANCE COMPANY is a foreign business corporation duly existing by the virtue and laws of the State of Illinois which does business in New York.

14. Defendant ALLSTATE LIFE INSURANCE COMPANY OF NEW YORK is a foreign business corporation duly existing by the virtue and laws of the State of New York and Illinois which does business in New York.

15. Defendants ALLSTATE FINANCIAL SERVICES LLC, ALLSTATE INSURANCE COMPANY, and ALLSTATE LIFE INSURANCE COMPANY OF NEW YORK are all wholly owned subsidiaries of The Allstate Corporation, and are collectively hereinafter referred to a "ALLSTATE" and/or "Defendant".

16. Defendant PAYROLLING PARTNERS, INC. (hereinafter referred to as "PPI" and/or "Defendant") is a foreign business corporation duly existing by virtue of the laws of the States of New York and New Jersey which does business in the State of New York.

17. At all times material, Defendant companies, JGAC, ALLSTATE and PPI were employers of Plaintiff.

18. At all times material, Defendant companies, JGAC, ALLSTATE and PPI operated an integrated business enterprise out of the New Rochelle JGAC/ALLSTATE office located at 214 North Ave, New Rochelle, NY 10801.

19. At all times material, Defendant JUAN GONZALES (hereinafter referred to as "Defendant GONZALES" and/or "GONZALES") was and is the owner and proprietor at Defendant JGAC and is a registered agent of ALLSTATE and had supervisory authority over Plaintiff with regard to her employment.

**STATEMENT OF FACT**

20. Around September 28, 2015, Defendants hired Plaintiff as an office manager.

21. Around the last week of January, 2017, Plaintiff received a promotion to Licensed Sales Producer.

22. At all times material MASSIEL MORA (hereinafter referred to "MORA" and/or " Ms. MORA") was a sales person at Defendant JGAC/ALLSTATE/PPI.

23. At all times material to this civil action, Defendant GONZALES was the supervisor at JGAC and the direct superior of Plaintiff and Ms. MORA.

24. At all times relevant, Defendants JGAC, ALLSTATE and PPI were the employers of Plaintiff, Defendant GONZALES, Ms. MORA and the other ALLSTATE sales and administrative personnel employed at the ALLSTATE Branch Office Location at 214 North Ave, New Rochelle, NY 10801.

25. Defendants JGAC and ALLSTATE operate an ALLSTATE insurance sales office in New Rochelle, Westchester County, New York located at 214 North Ave, New Rochelle, NY 10801 (hereinafter referred to as the "New Rochelle Office").

26. At all times relevant to this civil action up to the present, the New Rochelle Office bears large exterior, street-facing signage with the ALLSTATE name and corporate logo.

27. The New Rochelle Office bears large exterior, street-facing signage with the ALLSTATE corporate logo on the window.

28. The New Rochelle Office bears large interior signage on a wall visible to the public and office workers with the ALLSTATE name and corporate logo.

29. ALLSTATE customers purchase insurance products from ALLSTATE through Defendants' employees who work in the New Rochelle Office.

30. All of the insurance products sold through the New Rochelle office are produced by and underwritten by ALLSTATE.

31. ALLSTATE customers and potential customers seeking to purchase auto, renters, home, motorcycle, boat, ATV, business and/or life insurance, as well as other financial and banking instruments and products in the New Rochelle, Larchmont and Bronxville, NY area from

ALLSTATE are directed via ALLSTATE's website, allstate.com, and toll-free phone number to the JGAC/ALLSTATE New Rochelle office.

32. ALLSTATE's parent company, The Allstate Corporation operates several subsidiaries in New York State and has continuously provided numerous commercial services in New York State and in Westchester County New York since approximately the 1950's.

33. Defendant ALLSTATE is one of the largest insurance companies in the United States.

34. ALLSTATE advertises for and provides insurance products, management and sales support to agents and sales associates who sell and distribute ALLSTATE's products throughout New York, including through the New Rochelle Office.

35. Defendant JGAC is a local agent, customer point of contact and sales service exclusively for Defendant ALLSTATE in the New Rochelle, Larchmont and Bronxville, NY area.

36. Defendant JGAC is a local sales and service provider, that is required by Defendant ALLSTATE to exclusively sell ALLSTATE products exclusively to ALLSTATE customers.

37. Defendant JGAC exclusively provides products and services to customers supplied by and policies underwritten by Defendant ALLSTATE and controlled or affiliated entities.

38. The documents reflecting sales of products and services provided to ALLSTATE customers via Defendant JGAC are uniformly on documents bearing ALLSTATE letterhead.

39. Defendant JGAC is a local insurance policy sales, administration arm and branch office location of Defendant ALLSTATE.

40. Plaintiff, Jane Doe, was a licensed sales associate for JGAC and ALLSTATE and worked at the New Rochelle JGAC/ALLSTATE office, which is locally managed by Defendant Juan Gonzales, and regionally managed by ALLSTATE.

41. As a licensed sales associate at JGAC/ALLSTATE's Plaintiff sold products and conducted customer service exclusively for ALLSTATE and its affiliated companies.

42. Defendant ALLSTATE required Defendant JGAC and all employees/licensed sales associates in the New Rochelle JGAC/ALLSTATE office to comply with policies and procedures implemented by Defendant ALLSTATE.

43. Licensed sales associates in the New Rochelle JGAC/ALLSTATE office, including Plaintiff, were required by ALLSTATE to utilize ALLSTATE's proprietary web portal, web applications, database, training materials, sales data, service data and policy data in the execution of their work duties.

44. Defendant ALLSTATE conducts and provides licensed sales associates, such as Plaintiff, extensive training on sales techniques, customer service, products and policy details, new product availability and claims services.

45. Defendants supplied Plaintiff with business cards emblazoned with the ALLSTATE name and corporate logo.

46. Plaintiff's work email address was her first initial and last name @allstate.com.

47. Defendant ALLSTATE controlled, maintained, hosted the web domain and at all times retained access to Plaintiff's work email.

48. Defendant JUAN GONZALES' work email is jgonzales@allstate.com.

49. Defendant ALLSTATE controlled, maintained, owned the web domain and at all times retained access to Defendant JUAN GONSALES' work email.

50. Defendant GONZALES is registered with FINRA (the United States Financial Industry Regulatory Authority) as an agent of Defendant ALLSTATE, as documented on FINRA's publicly accessible website, brokercheck.com.

51. Defendant GONZALES' FINRA brokercheck.com profile lists his registration with ALLSTATE FINANCIAL SERVICES LLC as currently active.

52. Defendant GONZALES' FINRA brokercheck.com profile lists his "employment" as with ALLSTATE FINANCIAL SERVICES LLC.

53. Defendant GONZALES' FINRA brokercheck.com profile lists ALLSTATE FINANCIAL SERVICES LLC's "Branch Office Location" address at 215 North Ave New Rochelle, NY 10801-6467.

54. Defendant GONZALES' FINRA BrokerCheck report lists Defendant GONZALES' "Employment" from "3/2014 - Present" with "Employer Name": Allstate Insurance Company.

55. Defendant GONZALES' FINRA BrokerCheck report shows that he was trained by ALLSTATE to become an ALLSTATE agent, and that the training took place for the period of March 2014 to June 2014.

56. In servicing customers and their accounts and policies, all employees at the New Rochelle Office, including Plaintiff and Defendant GONZALES, were required by ALLSTATE to use only ALLSTATE's proprietary website, web applications, software, database and user interface as their tools to access and service clients' accounts, transaction history, policies and other data.

57. Defendant PPI carried out payroll, human resources and local employee administrative duties in the New Rochelle Office on behalf of JGAC and ALLSTATE.

58. Defendant PPI administered contracts and other documents for employees in the New Rochelle Office including Plaintiff on behalf of JGAC and ALLSTATE.

59. All trainings and day-to-day sales and procedures at the JGAC/ALLSTATE New Rochelle office, including those attended by Plaintiff and Defendant GONZALES, are overseen and

controlled by and conducted in accordance with ALLSTATE procedures and policies by ALLSTATE employees.

60. Defendant PPI provided Plaintiff with documentation stating that she was employed by "Juan Gonzales/Allstate."

61. Defendant PPI administered human resources tasks and payroll to Plaintiff on behalf of JGAC/ALLSTATE.

62. All instrumentalities that formed the basis of and facilitated the JGAC/ALLSTATE New Rochelle office's day-to-day business, including those utilized by Plaintiff and Defendant GONZALES, were controlled by ALLSTATE and in accordance with policies and procedures controlled, implemented and overseen by ALLSTATE.

63. Defendant ALLSTATE provided the JGAC/ALLSTATE New Rochelle office and Plaintiff with business tools used to conduct planning, sales, daily operations and customer service.

64. Defendant ALLSTATE paid JGAC and employees of the JGAC/ALLSTATE office wages, salaries and/or commissions is accordance with rates and guidelines established and controlled solely by Defendant ALLSTATE.

65. The wages, salaries and commissions paid to personnel working in the New Rochelle Office were paid from ALLSTATE and funneled through JGAC and/or PPI directly to employees, including Plaintiff, working in the New Rochelle Office.

66. Defendant ALLSTATE controlled the work activities, condition and management of Defendants JGAC and JUAN GONZALES.

67. Defendant ALLSTATE directly paid Defendant GONZALES.

68. At all times relevant, Defendant JUAN GONZALES was the manager and registered agent of the New Rochelle JGAC/ALLSTATE office and his employment and agent relationship with

Defendant ALLSTATE, including day-to-day work activities, was controlled by Defendant ALLSTATE and conducted on behalf of Defendant ALLSTATE.

69. Defendant ALLSTATE maintains strict oversight and control over the day-to-day business conducted at the JGAC/ALLSTATE New Rochelle office through constant on-line monitoring and periodic visits by regional managers.

70. At all times relevant to this civil action, Defendant ALLSTATE was affiliated with and operating with Defendant JGAC, specifically with respect to licensed sales associates including Plaintiff, such that Defendants JGAC, ALLSTATE and PPI were Plaintiff's employers.

71. At all times relevant to this civil action, Defendant PPI was affiliated with and operating in an integrated manner with Defendants JGAC, and ALLSTATE specifically with respect to licensed sales associates including Plaintiff, such that JGAC, ALLSTATE and PPI were Plaintiff's employers operating in an integrated business capacity.

72. At all times relevant to this civil action, ALLSTATE was integrated, affiliated with and operating with Defendant JGAC, specifically with respect to JGAC's registered ALLSTATE Agent Defendant, JUAN GONZALES, such that JGAC and ALLSTATE were Defendant, JUAN GONZALES' joint and singular employers.

73. At all times relevant to this civil action, ALLSTATE directly paid an employee in the New Rochelle JGAC/ALLSTATE office named Marcella Cofre, who held the title of Financial Specialist.

74. At all times relevant to this civil action, ALLSTATE directly paid an employee in the New Rochelle JGAC/ALLSTATE office named Vito Priello, who held the title of Personal Financial Representative.

75. At all times relevant to this civil action, Defendant GONZALES controlled all working conditions, including the right to hire and/or fire Marcella Cofre and Vito Priello.

76. At all times relevant to this civil action, Defendant ALLSTATE controlled the working conditions, including the right to hire and/or fire, Marcella Cofre and Vito Priello, as well as all other employees in the New Rochelle Office.

77. Defendant ALLSTATE characterizes and refers to licensed sales associates a/k/a licensed sales professionals, including those in the New Rochelle JGAC/ALLSTATE office, such as Plaintiff as, "our team" and "***Allstate*** Licensed Sales Professionals." (emphasis added)

78. Defendant ALLSTATE vets and reviews all potential JGAC/ALLSTATE licensed sales associates and holds control over the ultimate hiring decision for JGAC/ALLSTATE licensed sales associates.

79. ALLSTATE provided training to sales associates in order to obtain licensure from the State of New York to sell insurance products.

80. Potential sales associates are required by ALLSTATE to take the classes provided by ALLSTATE and conducted by ALLSTATE employees in order to obtain their licensure to sell insurance from the State of New York.

81. When Plaintiff was preparing to become a licensed sales associate for ALLSTATE, ALLSTATE required that she attend ALLSTATE's training program, which was conducted by ALLSTATE employees, in order to prepare for the New York State insurance licensure exam.

82. Once a licensed sales associate is hired at JGAC/ALLSTATE they are trained by Defendant ALLSTATE.

83. Once Plaintiff was hired at JGAC/ALLSTATE, she was trained by Defendant ALLSTATE.

84. Once an agent is engaged to sell ALLSTATE products, they are trained by ALLSTATE.

85. Defendant JUAN GONZALES was trained to sell products and conduct business on behalf of ALLSTATE out of the New Rochelle JGAC/ALLSTATE office by ALLSTATE.

86. During training, licensed sales associates, such as Plaintiff, learn ALLSTATE's policies, procedures, rates, including but not limited to how to sell ALLSTATE products, how to process and submit sales of ALLSTATE products to its customers, and including how to use ALLSTATE's proprietary online "e-agent" portal for submitting sales, claims and policy changes for ALLSTATE customers serviced by ALLSTATE licensed sales associates.

87. During training, ALLSTATE agents, such as Defendant GONZALES, learn ALLSTATE's policies, procedures, rates, including but not limited to how to sell ALLSTATE products, how to process and submit sales of ALLSTATE products to its customers, and including how to use ALLSTATE's proprietary online portal for submitting sales, claims and policy changes for ALLSTATE customers serviced by ALLSTATE agents such as Defendant GONZALES.

88. Agents, such as Defendant GONZALES, in their supervisory and managerial capacity have access to and are required to utilize ALLSTATE business tools to coordinate management planning, daily operations, policy and sales guidance, and customer service.

89. ALLSTATE maintains a disciplinary policy for the discipline of employees, including licensed sales associates who violate ALLSTATE policies and procedures.

90. ALLSTATE's disciplinary policy includes agents, such as Plaintiff and Defendant GONZALES and supervisors and management of JGAC as ALLSTATE is a joint and singular employer of these individuals.

91. ALLSTATE investigates claims of employment discrimination filed by licensed sales associates.

92. ALLSTATE investigated the EEOC charge filed as a prerequisite to this action and requested to interview Plaintiff after ALLSTATE was served with Plaintiff's EEOC charge.

93. Throughout their employment, licensed sales associates, including Plaintiff, are subject to additional training conducted by ALLSTATE so that licensed sales associates comply with ALLSTATE operational procedures and meet ALLSTATE sales expectations for the financial benefit of ALLSTATE.

94. During all times relevant to this civil action, ALLSTATE provided all necessary tools and procedures, including agent identification numbers, ALLSTATE's "e-agent" web tools, portal and database, allowing Plaintiff and Defendant GONZALES to conduct sales, customer service and other business on behalf of ALLSTATE.

95. During all times relevant to this civil action, ALLSTATE required that all transactions conducted by Plaintiff and Defendant GONZALES were made via the business and web tools provided to Plaintiff and Defendant GONZALES  by ALLSTATE.

96. During all times relevant to this civil action, all employees and sales associates conducting transactions on behalf of Defendant ALLSTATE at the New Rochelle JGAC/ALLSTATE office, including Plaintiff and Defendant GONZALES, were required by ALLSTATE to conduct all transactions and inquiries either through the ALLSTATE's web-based "e-agent" system and web portal or telephonically directly with ALLSTATE employees.

97. Throughout their employment, agents, in their managerial and supervisory capacity, such as Defendant GONZALES, are subject to additional training conducted by ALLSTATE so that office and sales personnel comply with ALLSTATE operational procedures and meet ALLSTATE sales expectations.

98. Agents, such as Defendant GONZALES in their managerial and supervisory capacity must receive substantially the same training that licensed sales associates receive in order to effectively execute supervision over licensed sales associates and office personnel in accordance with ALLSTATE policies, procedures and protocols.

99. During all times relevant to this civil action, Defendant GONZALES routinely attended various trainings conducted by ALLSTATE in compliance with ALLSTATE policies in order to conduct business on behalf of ALLSTATE.

100.   Plaintiff reported to JGAC/ALLSTATE's New Rochelle office, which is located within ALLSTATE's regional sales area and is controlled and operated by JGAC/ALLSTATE under ALLSTATE's oversight and ultimate control.

101.   Defendant GONZALES and MORA reported to JGAC/ALLSTATE's New Rochelle office, which is located within ALLSTATE's regional sales area and is controlled and operated by JGAC/ALLSTATE under ALLSTATE's oversight and ultimate control.

102.   During all times relevant to this civil action, ALLSTATE employees including "Field Sales Associates for the New York Region" would come to survey and inspect the JGAC/ALLSTATE New Rochelle Office to make sure the office was in compliance with ALLSTATE's policies and rules.

103.   During all times relevant to this civil action, Defendant GONZALES would instruct employees at the JGAC/ALLSTATE New Rochelle Office how to prepare for visits from ALLSTATE Field Sales Associates, including instructing employees how ALLSTATE expected the employees to dress, maintain their office spaces and desks, and conduct business.

104.    During all times relevant to this civil action, the two ALLSTATE regional representatives, who were employees of ALLSTATE, who oversaw the JGAC/ALLSTATE New Rochelle Office were Jim Clark, and his successor, Cindy Allen.

105.    During all times relevant to this civil action, Defendant GONZALES reported directly to Mr. Clark and Ms. Allen.

106.    During all times relevant to this civil action, Defendant GONZALES openly referred to Mr. Clark and Ms. Allen as his "boss" to employees of the JGAC/ALLSTATE New Rochelle office. For example, Defendant GONZALES would instruct the employees in his office to prepare for visits from Mr. Clark or Ms. Allen, saying "***my boss is coming***," or words to that effect.

107.    As part of the onboarding process for newly hired licensed sales associates at JGAC/ALLSTATE, the newly hired associate is required to sign a non-compete agreement stating that if they leave the position, they will not go on to sell insurance products for any of Defendant ALLSTATE's competitors.

108.    As part of the onboarding process when Plaintiff was hired as a licensed sales associate at JGAC/ALLSTATE, she was required to sign a non-compete agreement stating that if she leaves the position, she will not go on to sell insurance products for any of Defendant ALLSTATE's competitors.

109.    It is believed and therefore averred that Defendant ALLSTATE makes the final hiring decision, engagement and/or promotional decision with regard to registered agents including ALLSTATE branch managers such as Defendant JUAN GONZALES.

110.   It is believed and therefore averred that Defendant ALLSTATE makes the final hiring decision, engagement and/or promotional decision with regard to registered agents including ALLSTATE licensed sales associates such as Plaintiff.

111.   During all times relevant to this civil action, ALLSTATE required that all computers and digital systems in the JGAC/ALLSTATE New Rochelle office, including those used by Plaintiff and Defendant GONZALES, must pass ALLSTATE's compliance standards and must be approved by ALLSTATE.

112.   At all times relevant to this civil action, ALLSTATE conducted background checks of all potential employees of the JGAC/ALLSTATE New Rochelle office, including Plaintiff and Defendants GONZALES and MORA.

113.   Over the course of Plaintiff's employment, Defendants subjected Plaintiff to unwelcomed sexual advances, criminal kidnapping, sexual assault, and false imprisonment on multiple occasions, criminal rape on at least one occasion, sexual harassment, discrimination, a hostile work environment and wrongful termination.

114.   The incidents of sexual harassment, including sexual comments, sexual gestures, and other forms of sexual harassment, assault and abuse that Defendants inflicted upon Plaintiff became so commonplace that they are far too numerous to individually detail herein. Among other things, the most egregious incidents of sexual assault and harassment, including criminal rape and kidnapping are detailed in this complaint.

115.   During the evening of around November 22, 2017, Defendants held a workplace Thanksgiving party (hereinafter referred to as "the Thanksgiving Party") that Plaintiff attended. Also present at the office Thanksgiving Party were Defendant JGAC's employee OSCAR VARELA (hereinafter referred to as "VARELA"), Ms. MORA and Defendant

GONZALES as well as the office-building superintendent JONATHAN MUNIZ (hereinafter referred to as "MUNIZ.")

116.    Plaintiff brought food to the party, where alcohol was also being served.

117.    During the Thanksgiving party, Defendant GONZALES approached Plaintiff and forcibly sat on Plaintiff's lap. Plaintiff tried to push Defendant GONZALES off of her.

118.    Defendant GONZALES began grinding his buttocks into Plaintiff's crotch.

119.    Ms. MORA immediately followed GONZALES and began dancing and sexually gyrating in front of Defendant GONZALES while he was sat on Plaintiff's lap grinding his buttock into Plaintiff's crotch.

120.    Plaintiff, disturbed by this, was able to finally shove GONZALES off of her lap, indicating that she wanted no part of GONZALES and MORA's sexual advances by moving away from them over to her own chair and sitting at her own desk.

121.    Shortly thereafter, all other attendees left the Thanksgiving party, except Plaintiff, Ms. MORA and Defendant GONZALES. Almost immediately after all other attendees left, Defendant GONZALES went over and locked the door to the office.

122.    While Plaintiff, was still at her desk, Defendant GONZALES, using both hands, grabbed Plaintiff by the sides of her face and started aggressively kissing her on her face and lips. Plaintiff immediately attempted to push GONZALES off of her but GONZALES overpowered Plaintiff and continued forcibly kissing Plaintiff against her will and despite her protests.

123.    Eventually Plaintiff was able to shove Defendant GONZALES off of her and she was able to get up and move away, telling Defendant GONZALES, "*what's wrong with you!*" Plaintiff was shocked and physically violated by the unwanted assault and battery she had just experienced.

124.    Defendant GONZALES and Ms. MORA then began kissing.

125.    Defendant GONZALES then looked over to Plaintiff and stated, "***I always knew that you [Plaintiff] liked me.***" Defendant GONZALES also stated, "***You [Plaintiff] are my right hand and [Ms. MORA] is my left***" and that "**[Plaintiff]** ***kiss good.***"

126.    Plaintiff began walking away when Ms. MORA grabbed Plaintiff and began forcibly kissing Plaintiff on the lips. Plaintiff pushed Ms. MORA away stating: "*Are you crazy?*" Defendant then repeated Defendant GONZALES's statement that "**[Plaintiff]** ***kiss good***"

127.    Shocked by the assault, battery and unwanted kisses on her face and lips she had just endured, Plaintiff retreated to the bathroom. When Plaintiff returned to the work area to collect her belongings and leave she walked in on Defendant GONZALES and MORA  engaging in sexual intercourse on one of the office chairs.

128.    Plaintiff, felt overwhelmed and shocked at the evening's events as she went home.

129.    After the incident at the office Thanksgiving Party, Defendant GONZALES and MORA began a targeted campaign of sexual harassment, intimidation and coercion against Plaintiff.

130.    During the period of time described in this complaint while Plaintiff was employed by Defendants, Defendant GONZALES was fully aware that Plaintiff's spouse was unemployed and that Plaintiff was the sole household breadwinner providing income to sustain the necessities for her family and two minor children

131.    By way of example only, on a routine basis Defendant GONZALES, Ms. MORA or both invited Plaintiff to join them for group sexual intercourse.

132.    Additionally, on multiple occasions Ms. MORA showed Plaintiff pornography on her phone and/or computer of two women engaged in sexual intercourse with a man while stating: "***This is* how [*Defendant GONZALES] wants us*.**" Plaintiff always objected to this sexual

harassment and unequivocally declined these invitations to have sex with Ms. MORA and Defendant GONZALES.

133.    In addition to these sexual requests, Defendant GONZALES and MORA frequently directed vulgar and sexually explicit comments towards Plaintiff including, *inter alia*, "***You have a camel-toe,***"[1] "***when [Plaintiff] wear jeans, you can see the lips [of her vagina], one goes this way and one goes that way***," and "***You have a big pussy.***"

134.    Around December 18, 2017, Plaintiff told Defendant GONZALES that she had been experiencing considerable pain and needed to leave work early in order to go to the hospital emergency room.

135.    Defendant GONZALES demanded to know the location of Plaintiff's pain before she could leave.

136.    Defendant GONZALES demanded to know the location of Plaintiff's pain.

137.    Plaintiff, humiliated by Defendant GONZALES's inappropriate and intrusive questions, indicated that she was suffering from pain on a sensitive, private part of her body and pointed to her crotch.

138.    Defendant GONZALES immediately reached out with his hand, and groped and probed the Plaintiff's vagina with his fingers.

139.    Plaintiff was stunned by Defendant GONZALES's sexual assault and Plaintiff immediately left for the hospital.

140.    Around February 2, 2018, after a meet-and-greet event with employees of Defendants and an affiliated Allstate office in Eastchester, New York, several of the employees went to a bar for drinks. Defendant GONZALES, after drinking heavily, began kissing Ms. MORA in front

---

1    A vulgar reference to the way Plaintiff's pants fit over her vagina.

of all present. Defendant GONZALES, visibly intoxicated, then turned to Plaintiff and, without hesitation, began forcibly kissing her on her lips.

141.    Defendant GONZALES forcibly kissed Plaintiff in front of her co-workers and other attendees of the earlier event until Plaintiff was able to shove Defendant GONZALES away. Defendant GONZALES then stated to Plaintiff, in front of all present in sum and substance, "***I know you like me but you're married. Don't get mad like that. You and* [*MORA*] *are mine.***"

142.    Plaintiff felt humiliated and objectified in front of her coworkers and colleagues.

143.    Around mid-February, 2018, as Plaintiff was preparing to leave the office at the end of the day, after the office had been locked requiring a key to unlock the door in order to exit the office, Plaintiff returned to her desk to find that her keys had been taken so she could not leave the office.

144.    Plaintiff began searching the office for her keys.  As Plaintiff searched, Ms. MORA said, "[***Defendant GONZALES***] ***took your keys.***"

145.    Trapped in the office with no way to leave, Plaintiff went to the the office to look for her keys, where she observed Ms. MORA and Defendant GONZALES engaging in sexual intercourse on the floor.  Upon being seen by Plaintiff, Defendants GONZALES and MORA turned to face Plaintiff and called out to Plaintiff, "***Come, come! You want this?!***"

146.    Plaintiff noticed her keys had been placed on a shelf behind Defendants MORA and GONZALES, where they were engaged in sexual intercourse.  Plaintiff moved around Defendants GONZALES and MORA, as they engaged in sexual intercourse on the floor, to take back her keys, and quickly exited the office.

147.   Despite Plaintiff's repeated and unequivocal rejections and clear requests for Defendant GONZALES and Ms. MORA to stop their harassment and sexual assaults, Plaintiff was subjected to an increasingly hostile work environment based on her sex/gender.

148.   Around March 8, 2018, once all other employees in the office left work for the day except for Defendant GONZALES and MORA, Defendant GONZALES took Plaintiff's keys from Plaintiff's desk without Plaintiff's knowledge.  Defendants MORA and GONZALES then locked Plaintiff inside the New Rochelle Office alone with them.

149.   Trapped and locked inside the office alone with Defendant GONZALES and MORA, Plaintiff saw Defendant GONZALES holding Plaintiff's keys in his hand.  Plaintiff told Defendant GONZALES, "*give me my keys, I have to go*."

150.   Defendant GONZALES, replied, "***you're not leaving***." Defendant GONZALES then walked over to Ms. MORA, placed Plaintiff's keys on a shelf behind himself and Ms. MORA. Ms. MORA and Defendant GONZALES then disrobed and began engaging in sexual intercourse in front of Plaintiff.

151.   Plaintiff, locked in the office with Defendants GONZALES and MORA as they were having sex, feared she was about to be raped. While Defendant GONZALES was preoccupied engaging in sexual intercourse with Ms. MORA, Plaintiff was able to slip past them, grab her keys and quickly leave the office.

152.   Plaintiff was shocked and mortified by what she had witnessed and been subjected to that evening and, in disbelief, texted her sister-in-law to inform her that Defendant GONZALES and MORA were having sex in front of her again.

153.   Around April 5, 2018, Ms. MORA and Plaintiff went to a nearby bar with Ms. MORA after work. Ms. MORA spent most of their time at the bar using her phone to email back and forth

with Defendant GONZALES.  Ms. MORA showed Plaintiff a message she had received from Defendant GONZALES on her phone. The message read "***Get me that ass ready***."

154.    Ms. MORA told Plaintiff that Defendant GONZALES intended the message as directions that Ms. MORA was to recruit Plaintiff into sexual intercourse with Defendant GONZALES and Ms. MORA.

155.    In response, Plaintiff explicitly stated that Defendant GONZALES and MORA needed to stop their sexual assaults and sexual harassment of Plaintiff and stop trying to get her to have sex with them.  Plaintiff stated, "***No! Leave me out of it.***"

156.    Around early April 2018, after all of Defendants' employees, except Defendant GONZALES, Ms. MORA and Plaintiff, left work for the day, Defendant GONZALES grabbed Plaintiff by her hands and forced her on top of his desk.

157.    Plaintiff attempted to push herself off the desk but Defendant GONZALES forcibly pinned her down.

158.    Defendant GONZALES then reached down to Plaintiff's crotch, hiked Plaintiff's dress up and yanked Plaintiff's underwear aside exposing her genitals.

159.    Defendant GONZALES exposed his erect penis and began thrusting it toward Plaintiff's vagina.

160.    Plaintiff continued fighting against Defendant GONZALES, while pleading with him to let her go, in an effort to get him to stop.

161.    Ms. MORA, who was sitting close by watching the attack, stated to Plaintiff, in Spanish, "***today is your turn***."

162.    Plaintiff begged Defendant GONZALES, "***Please don't do this. Please stop. I don't want to have sex with you***."

163.    Plaintiff struggled and tried to shift her vagina away from Defendant GONZALES' erect penis. Defendant GONZALES physically overpowered Plaintiff and forcibly penetrated Plaintiff's vagina with his erect penis.

164.    Defendant GONZALES raped Plaintiff by forcibly penetrating her vagina with his penis against Plaintiff's will, while she was begging him to stop.

165.    Plaintiff screamed for Defendant GONZALES to stop, and continued trying to break free from under GONZALES, but she was unable to physically ward off Defendant GONZALES from raping her.

166.    As Defendant GONZALES continued raping Plaintiff, MORA watched the rape while seated on a chair nearby.

167.     When Defendant GONZALES finished raping Plaintiff, he withdrew his penis from Plaintiff's vagina and allowed her to get up from underneath him. Plaintiff immediately ran to the bathroom in a panic.

168.    Defendant GONZALES and MORA, then, came over to the bathroom and GONZALES stated "***Next time it will be better. Did you like it?***" Ms. MORA then added in Spanish, **"[*Plaintiff*] *almost made me cum the way she screamed*.**" Plaintiff, in shock at just having been raped by Defendant GONZALES and terrified at the prospect of being raped again, retrieved her keys, immediately ran out of the office, got into her car and drove home crying in a panic.

169.    On the drive home Plaintiff received a phone call from Ms. MORA, who asked if Plaintiff was okay, then conferenced GONZALES into the call, who stated "***Next time we'll go to a motel and it will be even better***."

170.   Plaintiff was shocked, confused and traumatized by the rape she had just experienced and became gravely concerned that she would lose her job if she reported the rape to the police.

171.   Plaintiff was not aware of any Human Resources representative at Defendant ALLSTATE she could complain to.

172.   Defendant GONZALES intimidated Plaintiff into silence.

173.   Plaintiff was the sole breadwinner in her household at the time, and could not afford to lose her job.

174.   Defendant GONZALES knew that Plaintiff was the sole breadwinner in her household and could not afford to leave her employment as his subordinate at the New Rochelle Office.

175.   Defendant GONZALES used his position of power in the New Rochelle Office to attempt coerce sexual favors from Plaintiff and to intimidate Plaintiff into silence about the rape and ongoing sexual harassment.

176.   Defendant GONZALES used his position of power in the New Rochelle Office to intimidate Plaintiff into silence about the ongoing sexually abusive treatment and discrimination he subjected her to.

177.   Defendant GONZALES used his position of power in the New Rochelle Office to attempt to manipulate and gaslight Plaintiff into believing that she was a poor employee because she did not acquiesce to Defendant GONZALES' sexual advances and demands for sexual favors.

178.   Plaintiff suffered severe negative psychological effects that drastically impacted her emotional and psychological wellbeing due to the extreme and outrageous nature of the rape, constant sexual assaults and harassment from Defendant GONZALES.

179.   When Plaintiff continued to resist Defendants GONZALES and MORA's sexual advances, Defendants GONZALES and MORA began a campaign of retaliation against Plaintiff.

180.   By way of example only, Defendant GONSALES and Ms. MORA began deliberately not passing on client calls and messages they had taken for Plaintiff, surreptitiously making changes to Plaintiff's clients' accounts and then deliberately withholding information about these changes and poaching Plaintiff's clients and Defendant GONZALES became disproportionately critical of Plaintiff's work performance.

181.   Plaintiff complained verbally and in writing to Defendant GONZALES about MORA's retaliatory conduct on multiple occasions.

182.   Defendant GONZALES began to fabricate reasons to complain about and write-up Plaintiff, including false accusations of late arrivals, long lunches and, shockingly, "***Not even giving me ass***".

183.   Defendant GONZALES added to the already uncomfortable and hostile work environment by routinely insulting Plaintiff, accusing her of having "***an attitude***" and "***not being humble enough.***"

184.   Plaintiff complained directly to co-workers and to her supervisor, Defendant GONZALES.

185.   Defendant GONZALES never took any reasonable corrective action in response to Plaintiff's complaints.

186.   Plaintiff consistently objected to the harassing and retaliatory behavior exhibited by Defendant GONZALES and MORA and Plaintiff *always* rebuffed and/or physically resisted their inappropriate and traumatizing sexual advances and assaults.

187.   Defendants, raped, kidnapped/falsely imprisoned, sexually harassed, sexually assaulted, discriminated against and retaliated against Plaintiff because of her sex and because she refused sexual advances and complained about sexual harassment.

188.   Around September 24, 2018 Defendants constructively discharged Plaintiff.

189.   A few days later Plaintiff received a letter dated September 25, 2018 from Defendants (hereinafter referred to as "the September 25th letter"). The letter stated, "***It has been brought to our attention that since your employment with the Juan Gonzales/Allstate you have attained other employment. As a reminder, in your employment with the office of Juan Gonzales/Allstate, you signed a confidentiality and non-compete agreement prohibiting the use of information from that office at another location. I trust that you will honor this agreement and cease contact with any clients of that office.***"

190.   It is clear that the September 25th letter was prepared and sent to Plaintiff to further intimidate her and silence her regarding the reprehensible and illegal conduct of the Defendants, including rape, kidnapping, sexual harassment and assault to which they subjected Plaintiff.

191.   As a result of Defendants' actions against Plaintiff, Defendants caused Plaintiff to be physically violated, humiliated, degraded, victimized, embarrassed, and emotionally distressed.

192.   As a result of Defendants' rape, sexual assault, wrongful imprisonment, sexual harassment, sex discrimination, retaliation and wrongful termination, Plaintiff has suffered and continues to suffer numerous physical and mental ailments including, but not limited to Post-Traumatic Stress Disorder, Major Depressive Disorder, Acute Anxiety Disorder and panic attacks.

193.   The above are just some of the examples of unlawful discrimination and retaliation to which the Defendants subjected Plaintiff to on an ongoing and continuous basis.

194.   Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

195.   At all times material, Defendants and Defendants' supervisors acted with deliberate indifference to the discrimination Plaintiff faced.

196.   As a result of Defendants' continued discrimination against and harassment of Plaintiff, she suffered numerous injuries including physical, economic, and emotional damages.

197.   As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of her wages, benefits and other compensation, which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

198.   As Defendants' conduct has been malicious, reckless, willful, outrageous, and conducted with full knowledge of the law, Plaintiff will demand punitive damages against the Defendants.

199.   The above are just some examples of some of the unlawful discrimination and retaliation to which Defendants subjected Plaintiff.

200.   Defendants' actions constituted a continuing violation of the applicable federal and state laws.

201.   Plaintiff hereby demands reinstatement to her original position with Defendant ALLSTATE.

**AS A FIRST CAUSE OF ACTION**
**DISCRIMINATION UNDER TITLE VII**
**(Not Against Individual Defendant)**

202. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

203. Title VII states in relevant part as follows:

"(a) Employer practices:

It shall be an unlawful employment practice for an employer:

> (1)    to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

204. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex and gender.

205. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e et seq., by terminating and otherwise discriminating against Plaintiff as set forth herein because of Plaintiff's sex and gender.

## AS A SECOND CAUSE OF ACTION FOR
## RETALIATION UNDER TITLE VII
## (Not Against Individual Defendant)

206. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this Complaint.

207. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

208. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

209. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Title VII.

## AS A THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## NEW YORK STATE LAW
## (Against All Defendants)

210. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

211. Executive Law §296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

212. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her sex/gender and by creating a hostile work environment.

## AS A FOURTH CAUSE OF ACTION
## FOR AIDING & ABETTING UNDER
## NEW YORK STATE LAW
## (Against All Defendants)

213. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

214. New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

215. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or

coercing the discriminatory behavior as stated herein.

**AS A FIFTH CAUSE OF ACTION**
**FOR RETALIATION UNDER**
**NEW YORK STATE LAW**
**(Against All Defendants)**

216. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

217. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

218. Defendants engaged in an unlawful discriminatory practice by wrongfully retaliating against the Plaintiff.

**AS A SIXTH CAUSE OF ACTION**
**FOR ASSAULT AND BATTERY**
**(AGAINST DEFENDANT GONZALES INDIVIDUALLY)**

219. Plaintiff repeats and re-alleges each and every allegation made in this complaint as if they were set forth herein fully at length.

220. The aforesaid occurrences and resultant injuries to Plaintiff were caused by reason of the intent, carelessness and recklessness of Defendant GONZALES did suddenly and without provocation, did physically assault and batter Plaintiff, herein causing Plaintiff to sustain damages; in that Defendant GONZALES did conduct himself in a wanton, willful, reckless and heedless manner without regard to the safety of the Plaintiff herein; in that said Defendants were physically abusive; in behaving in a disorderly manner; in using unnecessary, excessive

and unlawful touching against the plaintiff; in willfully and maliciously assaulting and battering the Plaintiff herein.

221.    § 213-c of the Civil Practice Law and Rules provides as follows: Action by victim of conduct constituting certain sexual offenses: Notwithstanding any other limitation set forth in this article, a civil claim or cause of action to recover from a defendant as hereinafter defined, for physical, psychological or other injury or condition suffered by a person as a result of acts by such defendant of rape in the first degree as defined in section 130.35 of the penal law, or criminal sexual act in the first degree as defined in section 130.50 of the penal law, or aggravated sexual abuse in the first degree as defined in section 130.70 of the penal law, or course of sexual conduct against a child in the first degree as defined in section 130.75 of the penal law may be brought within five years. As used in this section, the term "defendant" shall mean only a person who commits the acts described in this section or who, in a criminal proceeding, could be charged with criminal liability for the commission of such acts pursuant to section 20.00 of the penal law and shall not apply to any related civil claim or cause of action arising from such acts. Nothing in this section shall be construed to require that a criminal charge be brought or a criminal conviction be obtained as a condition of bringing a civil cause of action or receiving a civil judgment pursuant to this section or be construed to require that any of the rules governing a criminal proceeding be applicable to any such civil action. NY CLS CPLR § 213-c.

222.    As a result of Defendant GONZALES' acts of assault and battery in violation of the above statute, Plaintiff has been damaged in an amount to be determined at the time of trial.

**AS A SEVENTH CAUSE OF ACTION**
**FOR INTENTIONAL INFLICTION OR EMOTIONAL DISTRESS**
**(AGAINST DEFENDANTS JUAN GONZALES AGENCY, INC. AND JUAN**
**GONZALES)**

223.    Plaintiff repeats and re-alleges each and every allegation made in the complaint as if they were set forth herein fully at length.

224.    Defendants' behavior was extreme and outrageous to such extent that the action was atrocious and intolerable in a civilized society.

225.    Defendants' conduct was so outrageous in character and extreme in degree as to go beyond all possible bounds of decency.

226.    Defendants caused Plaintiff to fear for Plaintiff's own safety.

227.    Defendants' breach of their duties to Plaintiff caused Plaintiff to suffer numerous injuries as set forth herein.

228.    As a result of Defendants' acts, Plaintiff has been damaged in an amount to be determined at the time of trial.

**AS AN EIGHTH CAUSE OF ACTION**
**FOR VIOLATING THE GENDER MOTIVATED VIOLENCE PROTECTION ACT**
**(AGAINST ALL DEFENDANTS)**

229.    Plaintiff repeats, reiterates and re-alleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

230.    N.Y. ADC. LAW § 8-903 states in relevant part "For purposes of this chapter: a. "Crime of violence" means an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges,

prosecution, or conviction. b. "Crime of violence motivated by gender" means a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender.

231.   N.Y. ADC. LAW § 8-904 : NY Code – Section 8-904: Civil Cause of Action states in relevant part "Except as otherwise provided by law, any person claiming to be injured by an individual who commits a crime of violence motivated by gender as defined in section 8-903 of this chapter, shall have a cause of action against such individual in any court of competent jurisdiction for any or all of the following relief: 1. compensatory and punitive damages; 2. injunctive and declaratory relief; 3. attorneys' fees and costs; 4. such other relief as a court may deem appropriate."

232.   N.Y. ADC. LAW § 8-905 Limitations states in relevant part: "a. A civil action under this chapter must be commenced within seven years after the alleged crime of violence motivated by gender as defined in section 8-903 of this chapter occurred. . . . c. Nothing in this section requires a prior criminal complaint, prosecution or conviction to establish the elements of a cause of action under this chapter.

233.   Defendants GONZALES' conduct constitutes crimes of "violence motivated by gender" under The Victims of Gender-Motivated Violence Protection Act ("VGMVPA").

Defendants GONZALES violated the sections cited herein as set forth and Plaintiff suffered numerous damages as a result.

**WHEREFORE**, Plaintiff demands judgment against all Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a jury trial on all issues to be tried.

Dated: New York, New York
January 22, 2021

Respectfully Submitted,
**DEREK SMITH LAW GROUP, PLLC.**
Attorneys for Plaintiff

BY:

   /s/ Seamus Barrett
Seamus Barrett, Esq.
1 Pennsylvania Plaza, 49th Floor
New York, New York 10119
(212) 587-0760